**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIA Separations Gesellschaft für Separationstechnologie mbH,<br><br>    Debtor in a Foreign Proceeding.[1] | Chapter 15<br><br>Case No. 25-10465<br><br>Re: D.I. 3 |

**DECLARATION OF MICHAEL WAGNER IN SUPPORT OF MOTION FOR
(I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF
FOREIGN REPRESENTATIVE; (III) RECOGNITION OF OPENING ORDER; AND
(IV) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Mag. Michael Wagner, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I am the duly appointed and acting trustee (in such capacity, the "Austrian Trustee") for BIA Separations, Gesellschaft für Separationstechnologie mbH (the "Debtor"), in the Austrian Proceeding (defined below) and foreign representative for Debtor (in such capacity, the "Foreign Representative") for purposes of the above-captioned chapter 15 bankruptcy case (the "Chapter 15 Case"). On September 15, 2015, I was appointed to act as trustee by order of the Austrian Insolvency Court of Eisenstadt (the "Austrian Insolvency Court") in the insolvency proceeding (the "Austrian Proceeding") of the Debtor commenced pursuant to the Bankruptcy Act of Austria and Article 3 of the Council Regulation (EC) No 1346/2000 of 29 May 2000.

2.  I am a Partner at the Austrian law firm of Hajek Boss Wagner Rosenich RechtsanwältInnen OG located at Blumengasse 5, A-7000 Eisenstadt, Austria, where my practice focuses on insolvency law and restructurings. I obtained my law degree in 1992 from

---

[1] Debtor's Austrian Company Registration Number is FN 296126f. The Debtor's mailing address is Viktor Kaplan Allee 12, 7023 Pöttelsdorf, Austria and, via its authorized representative, Blumengasse 5, 7000 Eisenstadt, Austria.

the University of Vienna. I qualified for eligibility to be appointed as a federal judge in Austria in 1997, and I completed the Additional Exam according to the Act on Training and Vocational Examination Accreditation in 1999, qualifying for a professional license as an attorney at law. In 2000, I was registered in the National Directory of Lawyers in Austria and joined the law firm that operates today under the name Hajek Boss Wagner Rosenich RechtsanwältInnen OG. With more than 24 years of experience, I am a recognized insolvency and bankruptcy expert in Austria, and I am fully familiar with the Austrian Bankruptcy Act and the European Union Insolvency Regulation.

    3.    In accordance with section 1515 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), I respectfully submit this declaration ("<u>Declaration</u>") in support of: (a) the *Official Form 401 Petition* (the "<u>Petition</u>"), and (b) the *Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, (III) Recognition of Opening Order, and (IV) Related Relief under Chapter 15 of the Bankruptcy Code* (the "<u>Motion</u>") filed contemporaneously herewith.

    4.    Where the matters stated in this Declaration are statements of legal opinion, such statements reflect Austrian law based on my education and years of experience practicing in Austria. Where the matters stated in this Declaration are statements of fact, they are either: (a) based on my personal knowledge and are known to me to be true and accurate; or (b) if not within my personal knowledge, are derived from my review of documents and/or information supplied to me, and are true to the best of my knowledge, information and belief.

    5.    As discussed herein, the Austrian Proceeding and, by extension, this Chapter 15 Case is the result of corporate malfeasance and fraud perpetrated by affiliates and individual

insiders of the Debtor and its affiliates. These individuals and entities misappropriated protected and confidential assets, including advanced proprietary and patented technology and processes integral to the production of biochemical and pharmaceutical products, and pilfered assets valued in the tens, if not hundreds, of millions of dollars, which ultimately resulted in the collapse of the Debtor. By and through the Chapter 15 Case, the Foreign Representative seeks to investigate and recover Debtor's assets and/or the proceeds or profits therefrom located in the United States for the benefit of the Debtor's creditors and other parties in interest.

I. **Overview of BIA Separations' Business & Corporate Structure**

6. The Debtor is headquartered in Pöttelsdorf, Austria, and is a part of an international corporate group. In 1998, Dr. Ales Strancar and several others founded BIA Separations, d.o.o. ("BIA SLO"), a Slovenian corporation. Later, the Debtor was founded on July 10, 2007. It was registered as the 100 percent "Hold-Co" of (a) BIA SLO on July 18, 2007, and (b) the newly formed BIA Separations, Inc. ("BIA USA"), a Delaware corporation, on August 31, 2007. Following a series of transactions described below, many of the Debtor's valuable assets became consolidated in BIA SLO, and the Debtor was improperly and completely divested of its ownership interest in BIA SLO. BIA USA remains the Debtor's wholly owned subsidiary.

7. Via BIA SLO, the Debtor developed, manufactured and distributed filtration and separation materials for biotechnology and pharmaceutical products and processes. At the core of the Debtor's business, these products allow for filtration speeds that are significantly faster than conventional filter technologies. They are particularly useful for vaccines and gene therapies. The Debtor's customers were pharmaceutical companies and contract manufacturers based around the globe, including in Austria, Germany, and the United States.

8.      The Debtor's products required significant investments of time and resources before they became profitable. The pharmaceutical industry is characterized by a prolonged process required to bring a product from conception to market approval. Products must pass through various clinical test phases and can take more than ten years for a drug, technology, or manufacturing process to reach the point of approval for industrial production. Once successfully placed and approved, the product approval is guaranteed for over twenty years. A customer seeking to replace the Debtor's filtration technology with a competitor's would require a renewed approval process, which provided the Debtor with a level of certainty regarding its income. As of April 2015, the Debtor had 34 customers with products in various stages of clinical trials. Projections at that time reflected sharp increases in sales beginning in 2019.

9.      The BIA corporate group had a lucrative intellectual property portfolio that included various patents. On July 10, 2007, the same date the Debtor was founded, a Participation Agreement and Agreement Among Shareholders was executed. Although the agreement provided that all existing intellectual property rights were to be transferred from BIA SLO to the Debtor and all future intellectual property rights shall be owned by the Debtor, the existing intellectual property rights were never fully transferred, and all future intellectual property rights were registered on behalf of BIA SLO. Dr. Strancar blocked the Debtor's registration as owner of the intellectual property rights in the registers, arguing that registration costs would amount to several hundred thousand Euros, which simply was incorrect. Instead, BIA SLO remained as owner in the registers to the present day, and the Debtor was issued a license pursuant to an agreement that appears to have been prepared in 2012, despite bearing an execution date of 2007.

10. BIA USA historically handled sales and product distribution for the Debtor in the United States. Presently, BIA USA appears to sell BIA SLO's products in the United States and does not appear to conduct any independent business activity.

11. With the exception of distribution in Slovenia and Croatia, the Debtor held worldwide distribution rights for its products from October 2007 through April 2015, at which point, the remaining rights were transferred to BIA SLO in exchange for a 20% license fee, as detailed in Annex 10 to the Vertrag über die Organisation der Geschäftstätigkeit und gegenseitige Zusammenarbeit, or the Agreement on the Organization of Business Activity and Mutual Cooperation. Annex 10 presently is the subject of rescission proceedings that I filed with the Regional Court of Eisenstadt (the "Eisenstadt Regional Court") in 2016 (Court No. 2 Cg 116/24d, formerly 27 Cg 2/22w) and remain pending. I am unable to confirm the authenticity of Annex 10 or the Agreement on the Organization of Business Activity and Mutual Coorperation.

12. Since the entities' inception, BIA SLO, BIA USA and the Debtor have each been led by the same two to three people. Dr. Strancar simultaneously has held board or other executive-level leadership positions in each of the three entities. He was Managing Director of BIA SLO since its inception in 1998. He was appointed as Managing Director of the Debtor on July 17, 2007, and to date, remains in that position. According to the Austrian Company Register, he is presently a 4.91% shareholder of the Debtor. In addition, Dr. Strancar was registered as a Director of BIA USA from 2007 to 2012, and as its only Director from 2015 to 2020. Dr. Strancar has maintained that he remains Director of BIA USA.

13. Mr. Martin Wodak also concurrently held multiple senior roles in several of the BIA entities over the years. Mr. Wodak was the Chief Financial Officer of BIA SLO from 2016 until 2020, including during the Sartorius deal, described below. His company, Martin Wodak

KG, was a shareholder of BIA SLO at the time of the Sartorius deal as well. He acted as an advisor of the Debtor from 2013 to 2015 and, in particular, was responsible for the Debtor's accounting and reporting functions. In 2021, Mr. Wodak became Director of BIA USA and remains in that position, although he has maintained that his position is Chief Executive Officer.

## II.  Events Leading to the Austrian and Slovenian Insolvency Proceedings

14.  The Debtor has been insolvent since at least December 2013, and the insolvency can be attributed to at least three causes: (i) outstanding debts owed to creditors; (ii) large, unauthorized transfers of funds and assets to BIA SLO without benefit to the Debtor in return; and (iii) an unauthorized capital increase of BIA SLO's shares, which diluted the Debtor's ownership stake and impeded any disposal of such stake.

15.  The Debtor had accumulated significant debts owed to several German and Austrian creditors, who initiated individual court proceedings. Dr. Strancar contested the debts, but ultimately, after a year of litigation, settled with the companies between mid-2014 and the first quarter of 2015. Some of the Austrian creditors received the equivalent of enforceable judgments (by way of enforceable notarial deeds) for the amounts due.

16.  Despite the growing indebtedness, from January 2014 through September 2015, Dr. Strancar completed a series of transactions that exacerbated the Debtor's insolvency. He transferred most of the Debtor's liquid assets, between €16 to €20 million in total since 2007, to BIA SLO such that no funds remained with the Debtor to pay the creditors. In a later decision, the Austrian Supreme Court (file number 8 Ob 85/16g) stated: "All actions of the debtor's managing director known to date have been detrimental to the debtor and have resulted in damage to the insolvency estate."

17. The Debtor's insolvency worsened on August 4, 2015, when Dr. Strancar executed an investment agreement dated July 23, 2015 with META Ingenium, družba tveganega kapitala d.o.o. ("META"), a European risk capital firm based in Slovenia. Per the agreement, META invested €1.5 million in BIA SLO for a 24.99% equity stake, to purportedly enable BIA SLO to expand its operations. Some of the Debtor's shareholders had offered to invest the €1.5 million into the Debtor instead, but that offer was declined. The META transaction not only caused the severe impairment of the Debtor's shares, but it also curtailed the Debtor's shareholder rights. The transaction diluted the Debtor's shares in BIA SLO from 100% to 75.01% and the Debtor's shares were subject to a multi-year sale prohibition. All key decisions now required a 76% majority; in other words, META was now required to approve all key decisions.

18. The Austrian Supreme Court (file number 8 Ob 85/16g) later concluded that Dr. Strancar had conducted collusive negotiations with META, resulting in an investment agreement that was detrimental to the Debtor and its creditors.

19. The Debtor's shareholders could not object to the collusive transaction, as they were not presented with the final investment agreement detailing the significant disadvantages until after the transaction had concluded.

20. There are several outstanding intercompany debts allegedly incurred in the years leading up to the Debtor's insolvency proceeding. BIA SLO filed a claim against the Debtor in the amount of €3.5 million based on several unverified invoices, many of which appear implausible on their face. BIA USA's September 30, 2015 balance sheet listed $1,083,284.15 in accounts payable owed to the Debtor and $1,264,648.00 in other current liabilities owed to the Debtor, for a total of $2,347,932.15 owed. Subsequently, BIA USA's 2022 tax return listed a

$2,112,003.00 debt owed to the Debtor. To my knowledge, no payments have been made from BIA USA to the Debtor since September 15, 2015.

21. On September 15, 2015, just 40 days after the META transaction, Dr. Strancar authorized the commencement of the Debtor's insolvency proceedings in the Austrian Insolvency Court. Less than a year later, on July 30, 2016, Dr. Strancar authorized the insolvency proceedings for BIA SLO in Slovenia.

### III. The Insolvency Proceedings & Dr. Strancar's Continued Depletion of the Debtor's Assets

22. On September 15, 2015, the Austrian Insolvency Court entered an order (the "Opening Order")[2], opening the Austrian Proceedings and appointing me as Austrian Trustee, in accordance with the Austrian Insolvency Act and the European Union Insolvency Regulation. The initial restructuring plan as submitted by Dr. Strancar proposed that the Debtor's creditors would receive a 20% pro rata distribution on their claims. The Austrian Insolvency Court held hearings on the restructuring plan on December 15, 2015, and February 29, 2016.

23. In my initial assessment of the Debtor's business, financial condition, and the proposed restructuring plan, I determined that the Debtor was insolvent and that certain transfers prior to the Austrian Proceedings from the Debtor to BIA SLO appeared unlawful. I retained Dr. Thomas Außerlechner, a sworn court expert on accounting and business evaluation, to prepare a report on the valuation of the assets of the Debtor (mainly, its interests in BIA SLO and BIA USA).

24. On February 18, 2016, Dr. Außerlechner issued a report concluding that neither cash flow, future earnings, nor break-up valuations of BIA USA and BIA SLO were possible because both of the Debtor's subsidiaries had failed to provide him with sufficient information.

---

[2] A true and correct copy of the Opening Order is attached hereto as **Exhibit 1** and incorporated herein by reference.

25. On March 10, 2016, the Austrian Insolvency Court appointed a creditors' committee, comprised of seven of the Debtor's creditors.

26. Around the same time, Dr. Strancar attempted an additional capital increase for BIA SLO shares, giving META, together with a new investor, a stake of over 50%, in exchange for €3 million, excluding subscription rights. Although BIA SLO shareholders approved a modified transaction where their subscription rights would not be excluded, Dr. Strancar later canceled the proposed transaction.

27. On April 27, 2016, the Austrian Insolvency Court issued an order rendering the Debtor's reorganization plan inadmissible because it was "clear that it was not possible to gain a sufficient overview of the debtor's financial situation, that the debtor's insolvency has been objectively present since the end of December 2013 at the latest…" The court converted the proceedings to bankruptcy proceedings, or liquidation proceedings. Dr. Strancar never appealed this decision, and the order became final.

28. One month later in May 2016, Dr. Strancar attempted another capital increase, €6 million to grant META together, with a new investor, a 76% stake in BIA SLO (the remaining equity held by the Debtor). The transaction would grant Dr. Strancar and certain others call options in BIA SLO. The Debtor rejected this transaction.

29. That same month, I filed an action against Dr. Strancar for damages, alleging that he unlawfully transferred at least €1.5 million to BIA SLO from mid-April 2014 to September 2015. These proceedings currently are stayed.

30. On June 13, 2016, based on the series of events leading up to the Austrian Proceeding, the Austrian Insolvency Court imposed certain protective measures to protect the Debtor's remaining shares in BIA SLO from Dr. Strancar's reach. Dr. Strancar appealed the

decision, and the Vienna Higher Regional Court ruled in his favor. I then appealed the Vienna Higher Regional Court's decision on September 6, 2016.

31. On September 27, 2016, the Austrian Supreme Court (file number 8 Ob 85/16g) entered an order (the "Injunction Order")[3] granting the appeal and prohibiting Dr. Strancar from acting as managing director or other representative of the Debtor to: (1) exercise the Debtor's voting rights on BIA SLO shareholder resolutions where the voting rights affect the Debtor's shares in BIA SLO; (2) perform legal transactions, perform legal acts, or make any legally relevant declarations in relation to BIA SLO; and/or (3) take any de facto actions or make any dispositions for the benefit of BIA SLO regarding the Debtor's assets belonging to the Debtor's Austrian insolvency estate.

32. In its reasoning, the Austrian Supreme Court presumed that Dr. Strancar had conducted collusive negotiations with META to the detriment of the Debtor, and that it had shifted funds from the Debtor to BIA SLO. Because of the presumption, the Austrian Supreme Court imposed the restrictive measures on an interim basis, and they presently remain in effect.

33. Separately, following the Austrian Supreme Court's decision, on June 27, 2016, the WKStA Vienna (the special prosecutor), provided notice to Dr. Strancar that it had opened an investigation against him concerning the same allegations. In 2022, the WKStA brought charges against Dr. Strancar, including grossly negligent impairment of creditors' interests. Dr. Strancar settled with the WKStA in 2023; although he did not plead guilty, he did accept responsibility and paid a fine.

34. On June 30, 2016, Dr. Strancar authorized the filing of BIA SLO's insolvency proceeding, amidst the appeals of the Austrian Insolvency Court's decision prohibiting

---

[3] A true and correct machine-translated copy of the Injunction Order is attached hereto as **Exhibit 2** and incorporated herein by reference.

Dr. Strancar from acting as the Debtor's managing director. In contrast to annual financial statements presented at BIA SLO's general meetings in March and June 2016, according to the financial statements filed with the Austrian Insolvency Court, its assets had suddenly decreased by approximately 40%, its liabilities had sharply increased, and there was a new €550,000 debt owed to META.

35. Dr. Strancar proposed a plan to expropriate the old shareholders' shares (the Debtor's and META's) in BIA SLO and to invite select investors to participate in a new capital investment of only €100,000. The plan also invited creditors to participate by converting their claims against BIA SLO to equity at a 4 to 1 ratio, i.e. for €1 of equity, €4 of claims would have to be converted. The plan required the conversion of at least €900,000 in claims and 60% of the unsecured creditors votes for acceptance. The secured creditors would receive 100% of their claims and did not participate. Dr. Strancar and persons presumed close to him held over 60% of the necessary creditor votes, and thus, the ability to unilaterally vote to approve the plan.

36. The plan was approved despite my objection, the pending interim injunction against Dr. Strancar, and multiple pending criminal and civil proceedings against Dr. Strancar. Dr. Strancar and persons presumed close received 87% of BIA SLO's shares, and META received 11% of shares (by converting its purported receivables of €550,000). The Debtor received no new shares, despite filing a claim for €1.5 million, which BIA SLO disputed. Thus, the Debtor was forced out as a shareholder and lost all its shares in BIA SLO.

37. Following the plan approval, BIA SLO reported that the value of shares totaled €1,272,321.40, of which €825,000 was new capital, and €447,321 was raised by converted receivables. These amounts are in stark contrast to the €16-20 million that the Debtor had transferred to BIA SLO from 2007 to 2015 for research and development. These amounts are

11

also significantly vary from the €6 million capital increase proposed by Dr. Strancar only a few days before authorizing BIA SLO's insolvency (see paragraph 28). In fact, according to an August 2022 valuation report filed by BIA SLO and prepared by Professor Dietmar Aigner, as of December 31, 2015, all of the shares in BIA SLO were worth between €41 million and €55 million.

38. In 2020, BIA SLO was acquired by Sartorius Stedim Biotech GmbH ("Sartorius"), a member of the Sartorius Group, a German pharmaceutical and laboratory equipment supplier, for a purchase price of up to €652 million, including earn-out. According to Sartorius' 2021 financial statements, Sartorius paid €235 million for BIA SLO's technology alone. The Debtor did not receive any proceeds, despite paying at least €16 million from 2007 to 2014 to BIA SLO to develop the technology at the center of the sale, technology that has a 10- to 15-year development cycle.

39. Since my appointment as Austrian Trustee, I have filed several actions against Dr. Strancar, BIA SLO, and/or META. The following related actions were filed:

    a) Three actions are pending in Eisenstadt Regional Court:

        i. The May 27, 2015 action against Dr. Strancar for at least €209,000 in damages, bearing file number 23 Cga 63/16y;

        ii. The May 27, 2016 action against BIA SLO seeking rescission of certain contracts; the case was later joined with the September 14, 2016 avoidance action, seeks €1,881,125.41 in damages, and bears file number 27 CG 2/22 w); and

      iii. The September 14, 2016 action against META, contesting the META investment agreement and partnership agreement, seeking €1,500,000 and bearing file number 2 Cg 116/24d (formerly 27 Cg 3/22t).

b) One action is pending in the Commercial Court of Vienna: The case was filed on September 25, 2023 by the Debtor against BIA SLO, and seeks to recover the Debtor's intellectual property rights. The Debtor also seeks a rendering of accounts and the court will determine the amount of damages (an adequate license fee) following the rendering of accounts.

c) One action is pending in the District Court of Nova Gorica in Slovenia: The Debtor filed suit against BIA SLO on May 11, 2023 for damages in the amount of $82,851,000 resulting from Dr. Strancar's abuse of power and subsequent expropriation of the Debtor's shares in BIA SLO. The matter is pending appeal.

d) A criminal complaint was filed before the Public Prosecutor's Office of Nova Gorica in Slovenia: it alleges abuse of power by Dr. Strancar and collusion with the managing director of META, resulting in the expropriation of the Debtor's shares in 2018. Damages are listed in the amount of €82,851,000 to €326,200,000. The matter is pending a decision to open an official investigation.

e) Two actions were discontinued:

      i. One investigation proceeding before the Eisenstadt Public Prosecutor's Office: An investigation proceeding was launched on October 10, 2023, and extended to 2024. The office is investigating allegations of

        fraud by Dr. Strancar, but the proceeding was discontinued for unknown reasons. The matter is pending an application for continuation.

    ii. One action in the Regional Court for Criminal Matters in Vienna: This matter, filed on February 5, 2022, involved allegations of grossly negligent impairment of creditor interests by Dr. Strancar and another member of BIA management, Dr. Franz Krejs. The matter was discontinued when Dr. Strancar and Dr. Krejs accepted responsibility without pleading guilty and paid a fine.

40. Although BIA USA remains a wholly owned subsidiary of the Debtor, since my appointment, I have not received regular, reliable reporting nor income from BIA USA. In fact, from the commencement of the Austrian Proceedings in 2015 through 2023, BIA USA failed to provide any reporting of its business activities to me, nor have I approved any business activities.

41. I estimate that BIA USA has generated sales of approximately €60 million in the period following the commencement of the Austrian Proceeding. From 2023 to present, despite numerous attempts to obtain information, BIA USA has provided me with a series of vague letters that included selective details about its activities and incomplete financial information.

42. The Austrian Proceeding is pending and awaiting the outcomes of several civil, labor law, and criminal proceedings.

**IV.**    **The Chapter 15 Case and the Need for Provisional Relief**

43. On the date hereof (the "<u>Petition Date</u>"), the Debtor filed a chapter 15 petition and the Foreign Representative filed the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, (III) Recognition of Opening Order, and*

*(IV) Granting Related Relief* (the "Verified Petition") and a proposed order granting the relief sought in the Verified Petition (the "Recognition Order"), thus initiating this Chapter 15 Case.

44. As stated above, the Austrian Insolvency Court converted the Austrian Proceeding to liquidation proceedings pursuant to its April 27, 2016 order. This Chapter 15 Case will permit me, the Foreign Representative, to ascertain the value of the Debtor's assets based in the United States, including its shares in BIA USA, as well as BIA USA's profits from business activities with BIA SLO or its affiliates. If successful, the Debtor will obtain the information it needs to support its ongoing civil and criminal law proceedings in Austria and Slovenia and recover funds for the Debtor's creditors.

### A. Statements in Support of Recognition of the Austrian Proceeding

45. In the Opening Order entered on September 15, 2015, the Austrian Insolvency Court appointed me as the Austrian Trustee. It is my understanding that my appointment as the Austrian Trustee satisfies the definition of a "foreign representative" as that term is defined in section 101(24) of the Bankruptcy Code.

46. I am authorized to act on behalf of the Debtor's assets and the Austrian insolvency estate, and I am engaged in ongoing efforts to investigate and preserve the assets of the Debtor, including the coordination of legal and accounting teams, and taking any other such action as is necessary for the well-ordered administration of the estate.

47. I understand that in order to be recognized as a "foreign main proceeding," a proceeding must be pending in the country where the debtor has its "center of main interests," which I understand to be the functional equivalent of a headquarters, place of business, or "nerve center." The Debtor's operations and the Austrian Proceedings satisfy this requirement. As set forth below, the Debtor's principal place of business/"nerve center" is located in Austria:

15

    a) The Debtor's headquarters and the location where its general management takes place is in Austria;

    b) The Debtor's accounting, financial and other books and records are located in Austria;

    c) All professional services for the Debtor, including legal services (excluding U.S.-based bankruptcy counsel and Slovenian legal advisors), are rendered in Austria;

    d) The Debtor does not maintain an office in the United States;

    e) The majority of the Debtor's creditors, including several named to the creditors committee by the Austrian Insolvency Court, are located in Austria; and

    f) Several of the Debtor's shareholders are located in Austria.

48. Based on the foregoing, Austria is the Debtor's nerve center.

49. The Debtor holds property in the United States—principally, 100% of the shares of BIA USA, a Delaware corporation. It is my understanding that under Delaware law, the shares of a Delaware corporation are considered property located in Delaware. Further, the shares that the Debtor holds in BIA USA are subject to the Austrian Proceeding.

50. The Debtor seeks recognition of the Austrian Proceeding in the United States pursuant to sections 1504 and 1515 of the Bankruptcy Code. That is, the Foreign Representative is seeking recognition of the Austrian Proceeding as a "foreign main proceeding," as such term is defined in section 1502(4) of the Bankruptcy Code, as well as seeking other necessary or appropriate relief in support of the Austrian Proceeding, including certain provisional relief in advance of the hearing.

**B. Need for Provisional Relief**

51.     In addition to seeking recognition on a final basis, the Foreign Representative also requests certain provisional relief, which includes: (a) staying the execution of any action affecting the value of the Debtor's assets; (b) entrusting the administration or realization of all or part of the Debtors' assets located in the United States to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to concealment or devaluation, or otherwise in jeopardy; and (c) any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

52.     This provisional relief is consistent with the Opening Order.

53.     I believe that the provisional relief requested is necessary and appropriate and is in the best interests of the Debtor, its creditors, and other parties in interest.

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: March 14, 2025

_____
Mag. Michael Wagner
Trustee of the BIA Separations Gesellschaft
für Separationstechnologie mbH
Insolvency Proceedings, solely in his